GRI Fox Run, LLC, the Delaware Women's Liability Corporation, and Brown v. Illinois LLC, a Wisconsin women's liability company. Defendant's athlete, argument on behalf of the plaintiff's defense, Ms. Leanne Bush Kent. Argument on behalf of the athlete, a GRI Fox Run, Mr. Jason M. Beck. Argument on behalf of the athlete, Brown v. Illinois, Mr. Mark T. Six. Ready to proceed? I'm here. May it please the court. My name is Ryan Bush Dent, and I represent the plaintiffs who are present today. We're here because the amended complaint was dismissed with prejudice on a 2615 motion to dismiss without leave to replete. But really why we're here is because the plaintiffs continue to suffer harmful consequences of defendant's unlawful conduct, and the city of Naperville has failed to do anything about it. We're here today asking for reversal or remand in order to allow the plaintiffs to replete. There are two main issues today. The first is the sufficiency of the pleadings for all of the counts, counts one through four. The second is the application of the Mormon doctrine to only the nuisance counts, which are counts three and four. Turning to the issue of sufficiency of the pleadings. As I stated, this was a section 2615, not a 2619 motion to dismiss, and not a motion for summary judgment. There were no affidavits and no evidence. How much evidence should you have to plead? We didn't have to plead any, Your Honor. There is no evidence required to be pled in the complaint. True. And I shouldn't have used the word evidence. But how much specific fact versus conclusion must you put forth in your complaint? Your Honor, we were required to plead the ultimate facts for the causes of action, which is what we did. We were not required to plead the specific facts giving rise to each one of those allegations. Now, there's a fine line sometimes between the conclusions and ultimate facts, but we pled more than enough facts in this complaint in order to sustain all four causes of action. The trial court here did not make the finding that there was no set of facts on which plaintiffs could state a cause of action. Instead, the court found that the allegations had not been pled with the required, quote, specificity. That is the wrong standard. The standard here is whether or not the complaint sufficiently informed the defendants of the causes of action against it. With the noise violations, you do – there are exceptions, correct? Yes, there are. And how in the pleadings do we know that the noise violations that you allege aren't exceptions? In the complaint, Your Honor, the noise violations that are alleged specifically talk about the truck traffic and the operations of the Marianos. It does not state that these were backup sirens or that these were emergency sirens or anything that would fall – Landscaping. Right. That would fall under the exceptions. Those were not the allegations in the complaint. The allegations were specific to the truck noise and the operations of the Marianos itself. Those are for the noise violations. Yes. Did you plead the time of the violations, and is that relevant? Your Honor, we didn't plead the specific times of the violations. However, we did plead that they are continuing and ongoing and that they do happen at all hours of the day and night. Now, the only reason why that's important is which of the ordinances comes into play, because there's a daytime and a nighttime. And they have different decibels. The decibels. Exactly. They have different decibel levels. And so in the complaint, we did allege that in specific instances, specific days, for instance, in 2018, there were violations. And those did occur during the day and night. In one of the allegations, we also stated that within a 24-hour period in 2018, the testing showed that there were over 100 violations, again, in the day and the night. So regardless of what time they were, they were violations above the decibel levels for the day or the night, whichever was specifically required there. So, again, the court here said that there was not the required degree of specificity. But as I stated, there's no heightened pleading standard here. Is there a heightened pleading standard for, say, for instance, a prosecutorial entity? So there is a different – it's a little bit different, but it's still the same type of standard. It's not a heightened standard, but there are specific things that need to be pled. More specific than an individual is required. Correct, Your Honor. And the municipality in a charging document for an ordinance violation under Rule 572 would have to plead the names of the parties and then also the ordinance, a reference to the ordinance that was violated and the nature of the offense. And those are the same types of allegations that we have in the amended complaint. We've pled obviously who the defendants are. We've pled what the nature of the offense is, that there's this truck and the noise from the Mariano's property that is spilling over and causing these noise ordinance violations. And we did say the specific noise ordinance that are implicated in this case. So even if we were stepping into the shoes of the municipality, which we're not, even if we were, we've met that standard as well. Are you moving on to the nuisance now? I can, Your Honor, if you want. I'm sorry. I don't have any other questions with respect to that. Sure. Okay, go ahead. And with respect to the nuisance, do you mean the sufficiency of the pleadings or the Mormon doctrine? Let's talk about the elephant. Sure. So for the Mormon doctrine, Your Honor, again, these only apply to counts three and four, the nuisance claims, which we've already talked about. The court found, the trial court found that the Mormon doctrine applied to the nuisance claims because the plaintiffs are, quote, seeking monetary damages only. That is not the correct standard. The standard for Mormon is economic losses, not monetary damages. The Mormon doctrine states that a plaintiff cannot recover purely economic losses as a result of expectations not being met in a commercial setting. Now, the theory behind this, of course, is that qualitative defects should be remedied in contract law, not in tort, and that there should not be unlimited liability for a single accident. But economic losses are specifically defined as damages for disappointed expectations, not monetary damages specifically. Monetary damages are different. Now, these damages that you're talking about, are they temporary or are they permanent? So in this case, Your Honor, they're both, and it depends on whether or not the defendants would be able to remediate or abate their nuisances. If they are, then it could be temporary. But so far, as we've seen, there isn't any. There hasn't been any abatement, no remediation. So I think that's for further analysis within the case for it to continue, Your Honor. Can you just assume for our sake that they're temporary, so they're capable of abatement? Sure. If they're capable of abatement, then the case law says that the damages that are allowed specifically for nuisance would be the loss to the use of the property, the annoyance, and the discomfort that the plaintiffs have to endure due to the nuisance. If it were permanent, it would be the calculation of damages, the value before and after the nuisance for the property. So assuming that it was temporary in this case, then the plaintiffs would be entitled to those damages for the loss of the use of their property, annoyance and discomfort. And that was enunciated in the Statler case, which the Chicago flood case cites, too, with approval. And your position is that those are not – those are monetary damages, not economic losses that are precluded by Norman? That's correct, Your Honor. Those are losses that are above and beyond economic losses. And they are monetary damages. They absolutely are. But the cases allow that. And the cases specifically state that all consequential damages flowing from the nuisance is a proper calculation of damages. And the Chicago flood case goes through that and states that that is the proper calculation of damages. And it also cites specifically to the Schatz case, which is an Illinois Supreme Court case, and lays out that exact calculation for damages. And in that case, there were two different plaintiffs. There was a residential homeowner who was able to recover monetary damages, not economic losses, for their loss of the enjoyment of their property, discomfort and annoyance. There was also a corporate defendant, and that was a business, that was a theater, and they were able to recover their lost profits. And that, again, was the consequential damages flowing from the nuisance. And they were monetary damages but not economic losses. How about the property depreciation, property value depreciation? The property value depreciation is a different calculation of damages that the Statler case talks about. And they were awarded those damages in that case, and that's for more of a permanent nuisance, Your Honor. And so that calculation of damages is also proper. And both types of damages that we just discussed are the types of damages that we have pled in the amended complaint. I'm sorry, go ahead. I don't want to keep controlling your presentation. No, it's fine. It's fine. The other issue that I was going to go to was the issue of the invasion, Your Honor, because the Chicago flood case specifically talks about you have to have both an invasion and you have to have these damages that are above and beyond economic losses, which can be monetary damages. So here in the invasion context, we have pled all of the ordinance violations from the noise, but then also light and odor invasions. Now, these invasions are non-trespassory. So it's different than a trespass where there's a physical invasion, something drops onto or crosses the boundary onto your property, right? So how I like to think of it is that you have a sign on one side of the property. It's a big sign. It's annoying. It's ugly. But it's not against any sign ordinances. It doesn't violate the law, but it's an eyesore, and you really don't like it. Well, a neighbor can't complain about that. It's not a nuisance because it doesn't cross the boundary onto your property. But if you have bullhorns on that sign and they start going off at all random times of the day, that can be a nuisance because the sound that's traveling from the sign crosses the boundary into the other adjoining property, and that is an invasion for nuisance. And that's what we have here. Should the court have taken into consideration the fact that your clients lived there or purchased there while there wasn't a strip mall there? So that was argued by defendants that we moved to the nuisance. However, we didn't move to the nuisance. The plaintiffs had been there for nearly 20 years with no problems whatsoever, no nuisance claims, no complaints. Mariano's came in, and that's when everything started. And Mariano's came in, they demolished the building that was there, the Dominick's. They built a new building. They moved the loading docks much closer to the plaintiff's property, and they removed any barriers and failed to put up any new ones that blocked that store from the adjoining landowners. Now, previously there had been barriers, but those aren't there any longer. Not only that, but the operations of the Mariano's is different than the store that was there before. The Mariano's has many more truck deliveries because it's not a local operation. So they have vendors delivering at all times of the day locally instead of the previous store that was more local and was able to consolidate their deliveries. So it was a very different operational mechanism that the old store uses versus the new store. That coupled with the physical change to the building is what's been causing these nuisances. Let us talk about your inability to amend the complaint. You amended it once, correct? Correct. And that was to correct names. Yes. So the first amendment was just to correct a defendant's name. There was no substantive revisions to the complaint. There was a previous motion to dismiss that was granted without prejudice, and the plaintiffs did amend their complaint to add a lot more facts that we didn't believe needed to be pled, but we pled them nonetheless to try to appease the trial court judge. And there was another motion to dismiss that was brought, and then that one was granted with prejudice. So how many motions did you make to amend? We had one motion to amend, Your Honor, on the very first complaint. The second time when the complaint was dismissed without prejudice, we were given leave to amend without requesting it. The judge has the discretion, obviously, under Rule 2615 to allow amendment of the pleadings if they deem it's required. And so in that instance, the judge did allow us to amend the complaint, and we did so. So this would be your third amendment, technically? Correct. The third amended complaint. The third complaint, Your Honor. Which was denied. Correct. Because I understand your point, though. You believe you have pled more than enough. Correct, Your Honor. And that the rest of this information that the court found as specificity should come out in discovery. That's correct, Your Honor. Things like – and those things specifically that the court talks about and the defendants talk about are related to the noise testing. And so they want us to plead in the complaint who the person was that conducted the testing, where the testing was conducted, what instruments they used, how it was conducted. Those are all evidentiary details that will come out in discovery and at trial. Those are not needed to be pled in the complaint. They don't even need to be pled for a charging document by the municipality. Again here, the trial court judge, Judge Wheaton, used the wrong standards in both of these instances. She imposed a heightened pleading standard for allegations in the complaint, and that was not required for any of the claims, the Adjoining Landowner Act or the nuisance claims. And she also used the wrong standard for the Mormon doctrine, and she imposed monetary damages instead of an analysis into economic losses. And for both of those reasons, we request that the judge – or, excuse me, that the dismissal be reversed or that it be remanded and we be allowed to replete. Thank you. Good morning. May it please the court and counsel, my name is Jason Metnick. I represent GRI Fox Run, the landlord-defendant appellee in this case. I'll be addressing the dismissal under Council 1-200-615 as well as the plaintiff's oral leave to amend their complaint. No, you were representing – you represent – is it the strip mall area? That's correct. The owner of the real estate. Okay. And so then you were also the – your client was also the owner of the real estate for the prior grocery store? No. My client purchased the real estate after the construction of the Mariano's. Okay. Thank you. And the prior landlord was named in the original complaint, and my client was named under the first amended complaint. That's where the name change occurred. Okay. I see. So with respect to the 615 dismissal, Judge Wheaton got it correct in this case. The plaintiffs have not pleaded the basics that we would be looking for, the who, what, when, where, why. So they – she said that they had to plead the type of noise, the decibel level, and the testing method. I agree with that. And that's not something that Judge Wheaton came up with out of thin air. That's what's required under the noise ordinance that the plaintiffs are electing to proceed under. I disagree with counsel that a municipality would not be required to provide that information. Almost always a municipality's violation begins with the issuance of a citation that indicates those very things, that a measurement was taken at a specific time, at a specific location, before it proceeds to move against any landowner for a violation of a noise ordinance. Thus, if the plaintiff's complaint simply listed one day, one time, one test over, that would be sufficient? Had they done that, they might have been able to plead one instance of a noise violation. We don't have that here. We don't have a single specific time of day or night when any measurement was taken in the year 2018. The plaintiffs have creatively pleaded their case based upon citations that were issued in 2016 and 2017, and now they have abandoned those allegations in their appellate reply brief and said, no, we really meant only what happened in 2018. The problem, as Your Honors know, is that under their second amended complaint, there is no allegation that any testing was performed in the year 2018. They have sort of tried to back in testing that might have been done by the city of Naperville years earlier and then just generalized by saying, tests were performed, we're not going to tell you when, and, you know, let's plead our case. That is not enough in this instance to state an adjoining landowner at claim of an ongoing or imminent zoning code violation. So we think that the circuit court should be affirmed on the dismissal accounts 1 and 2. The other point I'm going to address relates to the oral motion for leave to amend. The plaintiffs have waived that issue on appeal. We think the case law is very clear under Ignarski v. Norbutt that if there is no written proposed amendment that's tendered as part of the record on appeal, the plaintiffs can't meet their burden under the Loyola factors. We don't know. Don't they just have to make a motion to amend and it be denied, which is the case here? What they really need to do to preserve the issue on appeal is to tender a proposed written amendment, which they haven't done, and they elected not to do that even after the motion was denied. So your honors cannot determine based upon the record whether or not any proposed amended pleading would have corrected the deficiencies. We don't know if a proposed amended pleading would have been prejudicial or timely, because we don't have a record to examine what those amendments would have been, if it would have stated actual violations of noise ordinances or not. We just don't know that. And with respect to the fourth Loyola ---- What case do you have to support that theory? Ignarski v. Norbutt. And with respect to the fourth factor on timeliness, according to the plaintiffs and their oral argument at the trial court, they already had these facts and they elected not to include them in their second amended complaint. So Judge Wheaton was well within her discretion to deny leave on an oral motion to file a third amended complaint when no such proposed amended pleading was before her and the plaintiffs had had prior opportunities to amend. In her ruling, she also specifically told the plaintiffs they could file a new complaint the next day if there were new noise ordinance violations that were measured. She wasn't precluding them from doing that. For whatever reason, the plaintiffs have appealed instead of proceeding along those lines, which sort of indicates that this is not really an ongoing, imminent problem, as the plaintiffs indicate. And the plaintiffs have twice amended their complaints and they could have preserved their record on appeal and they didn't do it. So for all those reasons, the trial court should be affirmed in its dismissal of counts one and two as well as her denial of the leave to amend and file a third amended complaint. Thank you. I'll just give the rest of my time to Mr. Stakes. Sure. Good morning, Your Honor. Warren Stakes on behalf of a co-defendant, Romney's Illinois LLC. I'm going to be handling counts three and four, which are the nuisance claims. Just as a starting point, I'm going to pick up a question that you asked. It's argued that Judge, although it wasn't directly addressed by Judge Wheaton in her ruling, this isn't a nuisance claim. You know, there's a long list of Illinois cases, but you have to, in an industrial society, you have to balance the benefits and the burdens. And essentially what the Avery's are arguing here is that, well, we've lived here for 20 years and we were behind a dominix, essentially a strict law approved by a dominix, which I think, as we all know, failed. And now there's a more successful operation. So what are they alleging? They're alleging that it has more truck traffic. In and of itself, that's lawful. That's part of its business. Well, it has more truck traffic. It doesn't have the fence up that it had. It doesn't have the uppers with respect to trees that it had. The allegations as to the physical structure of the property, it was approved by the city. Ultimately, whether the loading dock is on one side of my client's property or the other, they still have to bring truck traffic in. The physical structure is a lawful physical structure. Ultimately, it's the use of that structure. It's the use of that property in our society, which is the grocery store. So essentially what they're arguing is that we're going to sue you for monetary damages any time that you have excess deliveries that we think inconveniences us or causes us a nuisance. Well, it's not inconveniencing them. It's violating the ordinance's decibel levels or things like that. So we live in an industrial society, but you still can't use that argument to exceed permissible decibel levels. I agree, and that's because there's a separate zoning ordinance, which we've addressed earlier. A municipality absolutely has the right under its zoning ordinance to set whether they're arbitrary or not arbitrary standards. And has. And has. I'm not going to say whether they agree or disagree. They're there. We understand that. Anybody can complain to the village about the zoning ordinance, or they can seek to sue if they want a well-pleaded complaint. And if the village doesn't want to do anything about it, they have the right to pursue an action under certain circumstances. Absolutely, but that doesn't create a nuisance. Ultimately, whether I've exceeded by 66 dBs, does that mean that there was a nuisance? Of course not. Ultimately, the question is, is the use a reasonable use? Does it interfere with the possession of their property? Of course. Absolutely. And they haven't alleged that? I don't think they've alleged that here. I think what they've alleged is in a conclusory fashion that we're inconvenienced because this store is more successful than the prior user, the Dominick's store, because they have more truck traffic, and they don't like that. They don't appreciate that. In and of itself, that's a lawful use. That's not an unreasonable use. That's not an invasion that in an industrial society you can claim it causes you inconvenience. But ultimately, if that's a nuisance, then this court will ultimately or the citizens will ultimately be in charge of whether or not there should be zoning violations because they're going to control what a client does. Christmas, we have to have more deliveries. Can't do that because the neighbors are going to complain. But that's how a business works. The use of the business in a lawful way doesn't create a nuisance. If it did, you'd create, I believe, a slippery slope where every time that that occurred, any neighbor can come in and complain that you've inconvenienced me. Wouldn't a good neighbor or couldn't? And this is, I don't know if I should even go here, but has there not been attempts to negotiate and become a good neighbor? My client wouldn't be in business if it didn't believe it was a good neighbor. Ultimately, the village of Naperville would have a hard time doing what it does if it wasn't a good municipality. So I think ultimately there are allegations in this complaint that are not relevant as to whether this is a well-stated plea. Having said that, in the context of a prior, this plaintiff moved into this property directly adjacent, as they've alleged, to a strip center parcel improved with a grocery store. Now they're complaining because the last grocery store failed and the new grocery store started up its business, and they've alleged, has more truck traffic, which they find offensive. I don't believe that that states a cause of action. Moving on to the issue of damages, because ultimately if there's no damages pled here, there is no cause of action. And as you inquired of plaintiff's counsel, the issue is Mormon. Counsel's misinterpreted Mormon as applied by Enrage Chicago Flood. The court in Enrage Chicago Flood made it clear they were overturning the appellate court, which had ruled that Mormon could not apply to nuisance because of the lack of a traditional physical invasion. What the appellate court, or the Supreme Court, said in Enrage Chicago Flood was Mormon does apply, and it's the expectation, it's the lost expectation of profits or values that is barred by Mormon. So in the Chicago Flood you're equating the plaintiff's claim as the Chicago Flood interpreter Hartford's claim. Disappointed expectations. Disappointed expectation in value in anything that relates to a disappointed commercial expectation. That is exactly what we have here. No physical invasion on the property. The argument on the, they are equating, because in the Enrage Chicago Flood there were two sets, there were multiple sets of plaintiffs, because there was the insurer and then there was the individuals, there was the class plaintiffs. Ultimately the court made multiple findings. One of the findings was that if you didn't have a physical invasion you had no cause of action at all. Secondly, and independent of that, the court said, however, you still have to have non-economic damages because Mormon does apply. And that's the point here. And in their allegations of their complaint, what they've alleged is due to the invasions, the market value of the Avery's property has substantially decreased. That is, and this is what Judge Wheaton ruled, that is an economic loss. Think about it. Is that a tort? Excuse me? Is that a tort? In what sense? Is the nuisance? The invasion. Or the invasion that caused the depreciation of the property. If the invasion ultimately, well, there's two aspects. You're alleging an invasion because you live next door to the neighbor and ultimately if you say that I've suffered inconvenience but I've suffered no damages, I think that's not a tort. I think that's nothing. I don't think that's, that doesn't rise to the level of a cause of action if the allegation is that I've suffered a market value loss. So it wouldn't be a tort. Think about it here. I buy my property, hypothetically, behind a grocery store. I'm going to purchase, negotiate a purchase price consistent with that location, location, location for real estate. We all know that. Several years later, I'm going to argue, well, I didn't make as much money as I thought. For whatever reason, that's a disappointing commercial expectation which actually would have been taken into account when you bought that property. That is an economic loss. So I guess to answer your question directly, that isn't a tort. It's barred by a mormon. And it's exactly what Interstate Chicago flood said as to how to apply the standards here. I do also want to note that on a pleading standard, there's nothing pled here. The entirety of their complaint as to damages other than what I just read you, which is the market value loss, is a single sentence, which they basically plead in a conclusionary faction. They've suffered inconvenience, health issues, annoyance, discomforts, disruptions in their peace and quiet, and invasions of their privacy, et cetera. That's it. That's a conclusion. Those aren't facts. To the extent they're going to come into court and argue ---- How specific do they have to be in those, in that complaint with respect to that? They're going to allege ---- Again, we're not notice pleading. We're in fact pleading. If they're going to allege a health issue, they should allege the basis of that claim. If they're going to allege inconvenience, I don't know if they've been inconvenienced. Just to simply come to the conclusion that they've been inconvenienced because the case law says that that's a category, I'm entitled to know it. I have to answer this complaint. Just like I have to understand what the allegations are, I should have the ability to answer it. And to the extent that you merely can have in a single sentence a run-on sentence, not a run-on but a sentence where you simply added in every type of damage possible and said, well, I've been damaged. I've suffered health issues and inconvenience. That's not enough. And there is a case law, and we cited it in our brief, that supports that merely a general allegation as to damage is not a basis to deny a motion to dismiss. They had multiple opportunities to amend. They chose not to. They chose not to add these facts. They chose not to add any of the specifics. So in that context, clearly Judge Wheaton was correct, and her decision should be affirmed. If you are correct, then why do we have to have discovery? If everything that the plaintiff would need in order to proceed to trial is put in the complaint, would you skip over any discovery? I don't believe that. You'd have everything you'd need. There's multiple reasons. First of all, they may plead stuff that isn't true. It happens all the time. I'm not saying that's true here, but I'm certainly entitled to know the basis, how they came up with that conclusion. There may be contention and erogatories, but ultimately, what's the underlying basis of those claims? Secondly, again, I'm not the way they got to their conclusions. Maybe questions of discovery. So let me be clear here, too. The issues under loss of use, inconvenience, annoyance, et cetera, you're not suggesting that that would be barred by Mormon. You're saying it's not specific enough. It was not specific enough. It wasn't really – it wasn't – it's not specific enough. To simply generally allege that these are the bases of our damages in addition to the market value loss, these are just conclusory statements. They have not been pled with any specificity. Essentially, they can determine what their damages are at a later date. Be concerned to discover. This is not a claim where you come into court and ask for discovery to decide what your causes of actions are. Again, that's – I believe that comports with Illinois pleading law, and merely coming in and pleading general, conclusory statement does not suffice. Is there anything else? Thank you very much. Thank you. Thank you very much. Do you wish to reply? I have a couple points that I want to touch on. The first is that – the sufficiency of the allegations in this complaint. We spent probably three pages in our reply brief going over many of the allegations. Not all, obviously, because there's 152 allegations in the complaint. But we went through a lot of the allegations that we have pled in the complaint, and those allegations sufficiently inform the defendants of the allegations and the claims against them. They are able to answer this complaint, and they should be required to do so. Opposing counsel talks about the different dates in 2016, 2017, and 2018. I do want to point out that in 2018 there are specific dates that are alleged in the complaint with respect to the noise violations, and those were in May, June, and November. Those specific dates also stated that there was one 24-hour period in which there were over 100 separate violations of the noise ordinance. Surely the plaintiffs are not required to plead every single violation when it's a continuing and ongoing violation that literally continues every day. Plaintiffs have pled specific dates where there were noise violations. As to the leave to amend issue, Judge Wheaton made it painfully clear that we were not going to be able to amend our complaint again. If we would have filed a motion for reconsideration in order to amend our complaint, we would have had no basis to do so. We didn't have any new law. We didn't have anything to actually say we need a reconsideration on this ruling. She had the discretion in the trial court to allow us to amend our complaint, which she did the first time. She denied that request when we did request that in the second motion to dismiss. Can you address the specificity that relates to the damages? Yes. The specificity for damages is that the opposing counsel says that we didn't specify certain allegations regarding the damages. The problem with that is that we have lots of allegations in the complaint that lead up to those damages. So we allege not only that we have health issues and loss and enjoyment and annoyance. But did you set out what health issues you were talking about? We did not set out the specific health issues, Your Honor. You mean like headaches or nothing? No general. We did not. No, we did not. We just stated that the plaintiffs did suffer health issues that they should be compensated for. If we had to allege the specific health issues and go down that road, we would have to list a lot of different details that, again, would come out in discovery. And the defendants were able to answer the complaint. If you have a car accident case, you have to plead with specificity what your injuries were before you seek a dollar amount, correct? Why is it any different in this case if you're seeking damages for health issues? Would you need to lay out what the health issues are in general? In general, Your Honor, my understanding of how these are generally pled for, say, a personal injury, is that they plead that there's specific personal injuries in a dollar amount to exceed $50,000. Correct. Right? So they have a general allegation as to the actual damages. Here we have a general allegation that we have health issues and that we need to be compensated for that. But we also allege that there are these noises and these odors that are twice of what the standard that most places use, including the State of Illinois. We have all of these allegations that there are all of these things coming onto our property that are affecting us. We plead that we have a nice backyard, that there's an in-ground pool that they like to entertain. They're not able to do those things now because of the nuisances, because of the invasion that is coming into their property. Right. But I think the question was about the health issues, and should you have to specify something greater than I have a health issue? Your Honor, if we do, we can do so when we have leach remand to replete. I do want to address the Chicago flood case just very briefly. In that case, there were two types of plaintiffs. There was the type that had no invasion and also had economic losses only. Then there was the type of plaintiff that had an invasion and had damages above and beyond economic losses. Both of those plaintiffs had monetary damages. So monetary damages is not the correct analogy. It really is economic losses. In that case, the court specifically held that those individuals that had damages above and beyond economic losses were allowed to have their claims survive. That's what we have here. Thank you. Thank you very much. Fascinating arguments. Appreciate arguments on both sides. We will be adjourned for the day and written decision in due time.